IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| ELMER B. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-1074-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

      Floyd H. Shebley
      419 Fifth Street
      Oregon City, Oregon  97045

            Attorney for Plaintiff

      Karin J. Immergut
      United States Attorney
      District of Oregon
      Britannia I. Hobbs
      Assistant United States Attorney
      1000 S.W. Third Avenue, Suite 600
      Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

Terrye E. Shea
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

       Attorneys for Defendant


KING, Judge:

Plaintiff Elmer Harris brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB").

I reverse the decision of the Commissioner and remand for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

Page 3 - OPINION AND ORDER

If the claimant is unable to perform work performed in the past, the Commissioner

proceeds to the fifth and final step to determine if the claimant can perform other work in the

national economy in light of his or her age, education, and work experience.  The burden shifts to

the Commissioner to show what gainful work activities are within the claimant's capabilities.

Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able

to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

### STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d

1190, 1193 (9th Cir. 2003) (internal citations omitted).

### THE ALJ'S DECISION

The ALJ found that Harris had severe impairments of glaucoma and degenerative disc

disease in his lumbar spine.  However, the ALJ also found that these impairments, either singly

or in combination, were not severe enough to meet or medically equal the requirements of any of

the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.  The ALJ

found that Harris had the residual functional capacity to perform modified light work and could

lift and/or carry 30 pounds occasionally and at least 10 pounds frequently; stand and/or walk six

hours during an eight-hour workday; sit two to six hours during an eight-hour workday; and

occasionally climb, stoop, bend, crouch, squat, kneel, and crawl.  Based on vocational expert

testimony, the ALJ found that Harris could work as an assembler–semiconductor and electronics

worker and was consequently not disabled as defined by the Act.

## FACTS

Harris, who was 50 years old at the time of the ALJ's opinion, claims to have been

disabled since October 15, 2003 due to pain in his back, elbows, and wrists.  Harris has a GED

and worked 24 years as a marine machinist.

Harris's back began to hurt him in 1984.  It became much worse after a fall at work in

1993 which resulted in Harris being off-work for most of the next four years and having one back

surgery.  He eventually recovered and returned to his original employment in ship repair, earning

over $40,000 in 1999.  Harris has suffered other injuries to his back while at work, including one

in 2002 which also caused a few months off-work.

Harris complains of constant pain in his lower and middle back, neck, ribs, wrists, ankles,

legs, and left elbow which intensifies from physical activity or staying in one position for any

length of time.  He uses over-the-counter anti-inflammatories, an electric tens unit, and sits in his

recliner with a heating pad three to six times a day to control the pain.  Harris has a prescription

for Vicodin but uses it much less than prescribed because of the side effects and lack of health

insurance.  He lives with his wife who does most of the work around the house.  Harris

complains that sweeping, mopping, vacuuming, mowing, shopping, and laundry cause too much

pain for him to do these chores.  He is able to dust and water the garden.  Other than watching

television, Harris's only hobby is to shoot pool once a week.  He has given up many other active

outdoor sports due to the pain and has also stopped cutting and hauling wood to heat the house.

## DISCUSSION

I.    <u>Harris's Subjective Symptom Testimony</u>

Harris contends that the ALJ erred by finding that his subjective symptom testimony was not entirely credible.  In particular, Harris argues that the ALJ mischaracterized the amount of housework he performs, wrongfully used Harris's union disability pension to discount his credibility, and misinterpreted Dr. Hook's report as evidence of malingering.

The Commissioner responds that the ALJ's conclusions are supported by substantial evidence.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom.  The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  <u>Id.</u> at 1282.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion.  <u>Id.</u> at 1284.

Page 6 - OPINION AND ORDER

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Lack of cooperation during an evaluation and efforts to impede accurate testing of limitations are valid reasons to find that a claimant lacks credibility. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). A tendency to exaggerate symptoms is another valid reason to support a negative credibility finding. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ's list of Harris's daily activities is not supported by substantial evidence. I agree with the ALJ that Harris washed dishes and dusted but I disagree with the rest of the characterization. The ALJ stated that Harris could drive, enabling him to grocery shop and perform other errands. Harris limits his driving to a 20 mile radius from his home and otherwise sits in the reclined passenger seat while his wife drives. He only shops once or twice a month. His daily walks with the dogs are 15 minutes long and have been reduced from four blocks to two blocks. Harris does not regularly perform yard work such as gardening and mowing, as the ALJ implies. He does regularly water the garden but mows using a riding mower only a couple of times a year. Harris does not hoe the vegetable garden or do other garden chores. He does play pool at a tavern weekly, as the ALJ stated. But Harris has given up all his other active hobbies, including skiing, golfing, sturgeon fishing, horseback riding, and bowling. Harris also no longer cuts or hauls firewood even though the home is heated by wood. His teenage son has taken over that chore. The ALJ characterized Harris's daily activities as much closer to normal than the record supports.

Page 7 - OPINION AND ORDER

The ALJ also put some weight on the fact that Harris was laid off as a standard business practice rather than because of his disability. When Harris stopped working in October 2003, he was laid off when the repair of the ship was finished, as is traditional in his industry. Harris told his employer that he could not return for the next ship because he was in too much pain. Thus, the ALJ's reason is not supported by the record.

The ALJ considered the fact that Harris receives a union disability benefit of $3,243 per month to present a potential for secondary gain and to give Harris a reason to be less than motivated to sustain competitive employment. This is not a clear and convincing reason to question Harris's credibility. Many people are entitled to disability payments in addition to what they may receive through the SSA. It is neither fair nor realistic to assume that all of them lack credibility.

The ALJ also relied on the report from a consultative physical examination by Dr. Hook:

> In his report, Dr. Hook noted the results of his examination were affected by the claimant's lack of effort and exaggerated symptoms. Significantly, Dr. Hook reported the claimant's subjective complaints were not an accurate representation of his physical condition. In light of these findings, I conclude the claimant's credibility has been weakened.

Tr. 22 (internal citation omitted).

Dr. Hook stated that half of Harris's range of motion limitations, other than in his axial spine and shoulders, were due to deconditioning, pain, and effort. The doctor thought that Harris's demonstrated functional abilities "understate somewhat his current abilities." Tr. 192.

I agree with the ALJ's characterization of Dr. Hook's report. Thus, this single reason to discredit Harris is supported by substantial evidence. When this reason is weighed against Harris's daily activities, however, his lack of effort and exaggeration of limitations during

Dr. Hook's examination does not rise to the level of clear and convincing reasons to reject his credibility. This is particularly true when you consider all of the physical activities Harris has stopped outside of his work life. I also note that Harris returned to several years of work after a multi-year recuperation from spinal injuries. This does not suggest a person who gives up easily.

In sum, I find that the ALJ improperly discounted Harris's credibility.

II.    <u>Lay Testimony</u>

Harris argues that the ALJ improperly disregarded his wife's personal observations of Harris's limitations.

The Commissioner responds that the ALJ discussed the lay witness's statements in sufficient detail and that any error was harmless.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. <u>Stout v. Commissioner of Soc. Sec. Admin.</u>, 454 F.3d 1050, 1053 (9th Cir. 2006). A medical diagnosis, however, is beyond the competence of lay witnesses. <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

"[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Stout</u>, 454 at 1056.

Harris's wife stated in a questionnaire that Harris spends 30 minutes each day dusting and watering the garden; that he shops quickly only once or twice a month; that he has given up his

highly physical hobbies and labor such as work around the house, skiing, and cutting firewood; and that he must rest 10 to 15 minutes after walking three or four blocks.  At the hearing, Harris testified that recently increased pain in one leg had reduced his ability to walk to two blocks at a time.

The ALJ stated that he considered Harris's wife's statement but because of the personal relationship, the wife's lack of expertise and, possibly, her lack of motivation to offer an objective or functional assessment, the ALJ would consider her statement with caution.

I again am not persuaded by the ALJ's reasons.  She is a lay witness so she would be expected to lack whatever expertise the ALJ hoped to find.  A lay witness's role is to testify to his or her observations of the claimant.  No expertise is required–the lay witness only has to be around the claimant enough to have personal knowledge of his actions.

The ALJ's other two reasons, the personal relationship and lack of motivation to be objective, collapse into one.  It is also a reason that would disqualify any family member from providing evidence.  This is not a reason germane to the witness.

I conclude that the ALJ did not give adequate reasons for failing to take Harris's wife's statement into account.  Her statement corroborates Harris's own account of his limitations. Discounting the wife's statement was not harmless error.

III.    Physician Opinion

Harris contends that the ALJ did not give adequate reasons for rejecting the opinion of his treating physician, Dr. Mitchell.  Harris raises the same concerns regarding his daily activities and Dr. Hook's consultative examination that are addressed above.  In addition, Harris argues

that Dr. Mitchell's difference in opinion on his ability to work is not inconsistent when the intervening chart notes are also considered.

The Commissioner responds that the ALJ set out and carefully considered the opinion evidence, advised what weight he accorded to it, and explained why.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831.

The ALJ stated that he gave less weight to a Treating Physician Questionnaire completed by Dr. Mitchell than to the consultative report from Dr. Hook.

As explained above, I agreed with Harris that the ALJ did not properly characterize Harris's daily activities. In contrast, I agreed with the ALJ's characterization of Dr. Hook's report that Harris exaggerated his symptoms during the examination and showed a lack of effort.

I will now address whether Dr. Mitchell's assessment is inconsistent with his chart notes.

Dr. Mitchell, Harris's treating physician for 12 years, completed the Treating Physician Questionnaire on January 26, 2007. He stated that Harris could not perform sedentary work on a full-time, predictable, and sedentary basis. Dr. Mitchell also stated that Harris would likely need breaks unpredictably, more often, and for a longer duration than is customary; would likely need to lie down or sit with his feet elevated on an unpredictable basis; would have his ability to perform mental tasks adversely affected by his pain medication; and would likely miss work 20 to 30 percent of the time.

The ALJ was concerned about the inconsistency between the January 26, 2007 Questionnaire and Dr. Mitchell's February 11, 2003 chart note that Mitchell's workers compensation case was closed and there was no obvious permanent partial disability. As Harris notes, however, there were intervening chart notes that support the 2007 Questionnaire.

On June 23, 2004, Dr. Mitchell noted without disapproval that Harris was considering early retirement and total disability because of persistent pain.

On November 2, 2004, Dr. Mitchell noted:

> Subject: long history of ongoing back pain. He's had a number of investigations and evaluations, the most noteworthy being an MRI of the lumbar spine in December 2002. He continues to have back pain which is slowly worsening in severity. He has tried a number of medications and managements but none made any substantial difference. Ten years ago he had a hemilaminectomy at L5. This surgery failed to substantially alter the progression of pain.

> The back pain (lumbar and cervical) pain [sic] now limits, prevents, any kind of meaningful work.

> . . . .

> Plan: Most of Mr. Harris' disability is caused by his ongoing persistent low back pain. No cure or substantial improvement is anticipated for his back

pain.  As a result Mr. Elmer Harris is permanently unable to perform any
substantial work activity.

Tr. 198.

I first note that the term "permanent partial disability" is a term of art in the workers

compensation field.  Moreover, the question of Social Security disability is for the Commissioner

and the courts, not the doctor.  The doctor's expertise is in describing limitations the claimant

faces in trying to work, not in answering the ultimate question of whether the person is disabled

under the Act.  Dr. Mitchell addressed Harris's limitations in the Questionnaire.  I am also

troubled by the fact that the ALJ did not address the November 2, 2004 chart note, particularly

since it states that Harris's back pain is slowly worsening in severity.  The Questionnaire was

filled out over two years later.  Harris's limitations could have changed significantly during the

interval.

The ALJ also noted that Dr. Mitchell cited a 2002 MRI and Harris's 1994 back surgery.

According to the ALJ, the MRI report concluded that Harris's degenerative changes are merely

mild.  The MRI report characterizes some of the findings as mild and others as moderate.  Thus,

the ALJ's characterization is understated.  The ALJ believed the 1994 surgery offered little if any

support for Dr. Mitchell's assessment because Harris returned to work after a full recovery.

Although this is true, it must be weighed against the fact that Harris has degenerative disc

disease, which would grow worse over time.

I also note that I concluded above that the ALJ improperly discredited Harris's subjective

symptom testimony.  Credibility determinations bear on the evaluation of medical evidence when

there are conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions.  Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005).

After considering all of the ALJ's reasons, I am concerned that he did not fairly review the evidence on both sides of the issue.  Further, Dr. Mitchell had an extended time to watch the progression of Harris's illness.  I must conclude that the ALJ did not provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Mitchell's opinion.

IV.    Remedy

There is no need to address Harris's contention that the ALJ erred by not addressing Harris's difficulty with his hearing and the pain in his middle back, ankles, knees, elbows, wrists, shoulders, neck, and rib cage.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant.  Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001).  If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id.  The hypothetical here did not address limitations stated by Dr. Mitchell or by Harris.

The court has the discretion to remand the case for additional evidence and findings or to award benefits.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited.  Id.  If this test is satisfied, remand for payment of benefits is

warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence.  Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).  The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant.  Id.  On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

If I credit the testimony of Dr. Mitchell and Harris, the vocational expert already testified that Harris could not sustain competitive employment.  I see no issues that need to be addressed by the ALJ.  Accordingly, I conclude that there must be a finding of disability.

## CONCLUSION

The decision of the Commissioner is reversed.  The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this _____1st_____ day of July, 2008.


    ___/s/ Garr M. King_____
    Garr M. King
    United States District Judge